IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**ANTONIO ALEJANDRO GUTIERREZ**                    Case No. 3:09-CV-6204-KI

              Plaintiff,

                                                                    OPINION AND ORDER ON
      vs.                                                       MOTION TO DISMISS

**MAX WILLIAMS,** Director Oregon Department
of Corrections**; COMMISSARY STORE OPERATOR;**
**KEEFE GROUP/ACCESS CATALOGUE COMPANY;**
**MIKE DODSON; A. BALES; ANGELA SMITH,**
Statewide Commissary Manager**; CULP, OSP**
Canteen Manager**; "MELONY" UNKNOWN LAST**
**NAME,** OSP Canteen Staff known by that name,

              Defendants.


      Antonio Alejandro Gutierrez
      Pro Se Plaintiff
      #5448026
      SRCI
      777 Stanton Blvd.


Page 1 - OPINION AND ORDER ON MOTION TO DISMISS

Ontario, OR 97914

      Pro se Plaintiff

John R. Kroger
Attorney General
Michael R. Washington
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

      Attorney for ODOC Defendants.

KING, Judge:

Plaintiff Antonio Alejandro Gutierrez, proceeding *pro se*, brings a civil rights action against the director and staff of the Oregon Department of Corrections ("the ODOC defendants") as well as the company which he believes distributed the shoes to the ODOC commissary, Keefe Group/Access Catalogue Company ("Keefe").  Before the court is the Motion to Dismiss filed by the ODOC defendants [58].

## ALLEGED FACTS

Gutierrez, a prisoner at the Oregon State Penitentiary ("OSP") at all times relevant to the allegations in his First Amended Complaint, alleges the ODOC defendants sold him defective shoes on multiple occasions that caused him back problems.  He alleges that "from January of 1998 to January of 2008[,]" the shoes he ordered from OSP's commissary, which Keefe had distributed to OSP, "have for the most part been in the form of defective items."  First Am. Compl. ¶ 14.[1]  He alleges that, as a result, he has suffered "pain and permanent musculoskeletal

---

    [1]I have reproduced the allegations exactly, including spelling and grammar.

and sciatic nerve damage." Id. Gutierrez describes the defect as an inch or two of material missing from the front of the sole, causing his toes to hang over the edge of the sole inside the shoe. He explains he cannot wear the regularly issued shoes, which are a Converse type shoe without arch support, because they "have also affected his health in the past" causing him "great pain," and because they are of "much lower quality and possibly even more detrimental to one's physical health[.]" Id. at ¶¶ 41, 45.

He alleges he currently owns three pairs of the defective shoes he ordered from the commissary. The first pair he purchased on May 5, 2007 and currently wears. He purchased the second pair on October 10, 2007, "which he accepted though defective for evidence in this case and has not worn." Id. at ¶¶ 20, 35. Finally, on January 15, 2008, he ordered another pair and has kept these only for evidence as well. He reiterates, however, that "for at least the past ten years, and about eight out of ten times, 80% of the time, he has ordered or purchased shoes they were so defective that he would either accept out of necessity, rejected them, and sometimes been allowed to reorder. These defects are such that to wear them is not only uncomfortable but also detrimental to his physical well being." Id. at ¶ 17.

In providing a summary of his past ownership of these defective shoes, Gutierrez alleges that he was "forced to discard" two defective pairs of shoes in 2009, one of which "dated back about eight years, had worn them only a hand full of times and were still in brand new condition, but also defective." Id. at ¶ 19. The other pair, which "dated back about six years," was also "seriously defective, being worn only because Plaintiff had no other choice as all other shoes he is tried to purchase since have had defects or have been worn with defects." Id. He then alleges, "It all has caused Plaintiff to at times have to keep wearing the same old and worn out defective

shoes, while often having to stand for long period of time at work, causing not just discomfort but a great amount of pain to his feet and lower back and most seriously sciatic nerve damage Plaintiff believes as a direct result of wearing these items." Id. at ¶ 22. Additionally, he has rejected seven other pairs, without reordering, in the past ten years, including "[a]pproximately three or four pairs in the applicable time frame of this claim." Id. at ¶ 21, n.7.

He alleges that during the past ten years, he has been denied permission to reorder and has been required to accept the defective pair of shoes. He suspects that the ODOC defendants do not actually reorder the shoes when he has pointed out the defect, but simply provided the same pair of shoes to him again. Additionally, he describes a disagreement with the commissary staff about a defective pair of shoes he purchased in November 2005 but rejected on December 16, 2005. When he saw the shoes were defective, he complained to them and the staff "snapped back" that he was "always complaining about the shoes." Id. at ¶ 22. He explained that all he wanted was a pair of shoes that were not "seriously defective." Id. He attempted to reorder them, was denied, and then indicated that he would purchase the shoes anyway as "evidence[.]" Id. At this point, the store manager shouted an epithet at Gutierrez and told him to get out of the commissary. He was also told he could not order another pair of shoes for two months. On November 2, 2007, Gutierrez wrote a letter to the Oregon Department of Justice, complaining about the defective shoes and explaining that they "caus[ed] me great discomfort and anxiety, as probably health problems as well." Pl's. Ex. 13, at 2. On January 16, 2008, defendant Angela Smith (then Gross), Statewide Commissary Manager, responded that the Commissary inspects the product it receives and that it would "never knowingly sell a defective product." Id. at Ex. 15.

Page 4 - OPINION AND ORDER ON MOTION TO DISMISS

Finally, Gutierrez alleges that "[b]eginning approximately over three years ago [from the filing of his First Amended Complaint on May 3, 2010], Plaintiff began having back problems in the form of substantial pain and some loss of movement."  First Am. Compl. at ¶ 47.  He alleges that in approximately November 2009, he developed sciatic nerve damage "causing his constant excruciating chronic pain that shoots from his lower back to buttocks and through his left leg."  Id.  He attributes the back pain to "[w]alking with his toes hanging over what feels 'like a ledge[.]'"  Id.

Gutierrez alleges violations of his Eighth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, in a complaint he signed on July 10, 2009 and filed on July 16, 2009.  He alleges he filed an initial grievance on November 5, 2007, which was returned as being outside ODOC's jurisdiction on November 16, 2007.  He admits he did not do anything more "for about seven months after receiving an answer to the initial grievance" "[b]ecause Plaintiff was involved in other habeas litigation concerning his incarceration, and because he had a statutory two year period in which to file a § 1983 claim[.]"  Id. at ¶ 30.  He filed a grievance appeal on July 12, 2008, which was rejected for being presented on the incorrect form on July 17, 2008.  Gutierrez challenged that response and filed a subsequent appeal on October 31, 2008.  Not receiving an answer, on April 29, 2009, he submitted a letter requesting information on the status of the appeal.  On May 5, 2009, ODOC informed Gutierrez that his first grievance, dated November 5, 2007, was denied because the quality of the shoes was outside ODOC control.  The second grievance, dated July 12, 2008, was submitted on a grievance appeal form.  If it was Gutierrez's intention to appeal the first grievance, "it could not be accepted because your first grievance on

this issue had been denied and it was also out of time frame."  Pl.'s Ex. 18.[2]

## LEGAL STANDARDS

Although a plaintiff need not allege detailed facts, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will be granted if the pleading fails to provide "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim rises above the speculative level "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).  The Court is required to "assume the veracity" of all well-pleaded factual allegations. Id. at 1950.  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 929 (9th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949)).

A motion to dismiss based on statute of limitations grounds will be granted "if the running of the statute is apparent on the face of the complaint." Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010).

## DISCUSSION

The ODOC defendants assert that Gutierrez's claims should be dismissed because Gutierrez failed to file his complaint within the statute of limitations.  Since Section 1983 contains no statute of limitations, Oregon's two-year personal injury statute of limitations governs the timeliness of a Section 1983 action in this court. Sain v. City of Bend, 309 F.3d

_____

[2]The ODOC defendants filed a Motion to Dismiss on grounds of failure to exhaust, but subsequently withdrew that motion.

1134, 1139 (9th Cir. 2002). Accordingly, Gutierrez must have filed[3] his complaint–thereby "commenc[ing]" the action–within two years of the date he knew or had reason to know of the injury which forms the basis for the action. ORS 12.110(1); Sain, 309 F.3d at 1137; TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

The ODOC defendants contend Gutierrez's cause of action accrued in 1998, when Gutierrez alleges he first purchased a pair of defective shoes, but he didn't file his complaint until July of 2009–eleven years too late. The ODOC defendants alternatively argue that May 2007 might be the purchasing event triggering Gutierrez's knowledge about his claim, but if so Gutierrez's complaint is again too late. The ODOC defendants dispute that either of the later purchases–October 2007 or January 2008–qualify as triggering events because Gutierrez alleges he never wore those shoes, only keeping them as evidence for this case. Since he never wore the shoes, his sciatic pain cannot be attributed to these later purchases that do happen to fall within the statute of limitations. Accordingly, he cannot have known or become aware of an injury caused by those particular shoes.

Gutierrez responds by conceding that Oregon's general personal injury statute of limitations applies, which is two years, while at the same time confusingly asserting that ORS 30.905, the statute governing the timeliness of product liability actions, applies. Cf. Pl's. Res. 3,

---

[3]In another twist, although the filing date on the court's docket is July 16, 2009, the "mailbox" rule applies. Douglas v. Noelle, 567 F.3d 1103, 1009 (9th Cir. 2009) (citing Houston v. Lack, 487 U.S. 266, 276 (1988)). Under this rule, for statute of limitations purposes, a pro se section 1983 complaint is deemed filed the moment the prisoner delivers it to prison authorities for mailing. Gutierrez's submission indicates that he signed his complaint on July 10, 2009 and so it is deemed filed on that date.

Page 7 - OPINION AND ORDER ON MOTION TO DISMISS

at ¶ 8, <u>with</u> ¶ 9.[4]  The precedent is clear, however; "Section 1983 claims are to be characterized as personal injury actions for statute of limitations purposes" and ORS 12.110(1) supplies the applicable statute of limitations.  <u>Douglas v. Noelle</u>, 567 F.3d 1103, 1109 (9th Cir. 2009) (citing <u>Davis v. Harvey</u>, 789 F.2d 1332, 1333 (9th Cir. 1986)).  In short, Gutierrez must have brought his complaint within two years of the date his claim accrued.

I next consider when Gutierrez's claim accrued.  Under federal law, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." <u>TwoRivers</u>, 174 F.3d at 992.  Gutierrez argues in his brief that he first discovered his injuries were related to the defective shoes when he filed his grievance on November 5, 2007.

The point of focus, however, is when Gutierrez knew or had reason to know that the ODOC defendants were allegedly acting in a deliberately indifferent manner to the pain he suffered as a result of the defective shoes.  <u>Id.</u>  I am unable to determine the exact date on which Gutierrez's Section 1983 claim accrued because Gutierrez does not describe in detail each time he complained about a defective pair of shoes.  However, if I assume he has alleged an Eighth Amendment claim, it is apparent to me that Gutierrez knew or had reason to know at least as of December 16, 2005 that his claim had accrued.  At that point, he had explained his problems with the shoes, described them as "seriously defective," but the staff "snapped back" that he "was always complaining about the shoes" and refused to allow him to reorder.  He then indicated his desire to purchase the shoes as "evidence," but was denied that opportunity and told he could not

_____

[4]The ODOC defendants appear to read this argument as Gutierrez's assertion of a product liability claim against them.  I do not read the First Amended Complaint to allege a product liability claim against the ODOC defendants and, accordingly, I do not address the ODOC defendants' arguments regarding Eleventh Amendment immunity or the applicability of the product liability statute of limitations.

purchase shoes for another two months.  First Am. Compl. ¶ 22.  Consequently, I find that the

allegations in his First Amended Complaint support a conclusion that, assuming he has alleged

an Eighth Amendment violation, his claim accrued on December 16, 2005, making the required

filing date for the complaint December 16, 2007.

Having concluded that the required filing date for the complaint was December 16, 2007,

Gutierrez's complaint is too late because he failed to commence this action until July 10, 2009,

unless any portion of the time is tolled.  Since the Prison Litigation Reform Act ("PLRA")

forbids a prisoner from bringing an action "with respect to prison conditions under section 1983"

until he has exhausted his "available" administrative remedies, 42 U.S.C. § 1997e(a), the statute

of limitations is tolled while the inmate engages in that process.  Brown v. Valoff, 422 F.3d 926,

942-43 (9th Cir. 2005) ("We do not regard the intersection of the exhaustion and statute of

limitations requirements as creating a problem for prisoners, however, as we agree with the

uniform holdings of the circuits that have considered the question that the applicable statute of

limitations must be tolled while a prisoner completes the mandatory exhaustion process.") (citing

cases).  Gutierrez raised this argument, but the ODOC defendants did not respond to it.

Gutierrez filed his first grievance related to the defective shoes on November 5, 2007, and

he received a letter from the grievance coordinator in response indicating ODOC did not believe

it had jurisdiction over the matter on November 16, 2007 (tolling the statute 11 days).  He admits

in his First Amended Complaint that he did not appeal immediately.  He considers the document

he filed on July 12, 2008 to be his appeal, to which he received a response on July 17, 2008

(tolling the statute 5 days).  He believes he filed his second appeal on October 31, 2008, and he

did not receive a response to that second appeal until May 5, 2009 (tolling the statute 186 days).

Page 9 - OPINION AND ORDER ON MOTION TO DISMISS

At this point, absent argument or evidence to the contrary from the ODOC defendants,[5] there is at least a possibility that the statute of limitations was tolled a total of 202 days. Nevertheless, if I accept, for purposes of this motion, that Gutierrez's claim accrued on December 16, 2005, and I toll the statute 202 days, the statute of limitations ran out on July 5, 2008 before Gutierrez filed his complaint.

Gutierrez alternatively argues that the ODOC defendants engaged in a continuing violation. The continuing violation doctrine "allow[s] a plaintiff to seek relief for events outside of the limitations period." Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). The doctrine permits the limitations period to begin anew where there is a system or practice of violating one's rights, or the alleged acts are so closely related as to constitute a continuing violation. Id. For the doctrine to apply, one or more of the alleged violations must have occurred within the limitations period. Id. Again, the ODOC defendants did not respond to Gutierrez's argument that they were engaged in a continuing violation.

The Ninth Circuit has not applied the continuing violation to Eighth Amendment deliberate indifference claims, but other courts have accepted the doctrine in this context. See Martin v. Woodford, No. 1:08-cv-00415-LJO-SKO PC, 2010 WL 2773235, at * 5 (E.D. Cal. July 13, 2010) (collecting cases). The doctrine is applicable either where the defendants have engaged in a "series of related acts" against him or engaged in a "systematic policy or practice . . . that operated, in part, within the limitations period–a systemic violation." Douglas v. California Dep't of Youth Authority, 271 F.3d 812, 822 (9th Cir. 2001); Jones v. Scribner, No. 1:04-CV-

---

[5]The burden of proof to show Gutierrez failed to exhaust his administrative remedies lies with the ODOC defendants. Jones v. Bock, 549 U.S. 199, 212 (2007).

05742-LJO-WMW, 2009 WL 233915, at *7 (E.D. Cal. Jan. 30, 2009) (repeated failures to fix roof, exposing prisoners to mold and pigeon feces, constituted a continuing violation).  Gutierrez alleges that the ODOC defendants are purchasing shoes in defective lots in high quantities, which are then sold to prisoners at a high margin of profit, and that this practice is deliberately indifferent to the pain the shoes cause him; therefore, he appears to be alleging a practice of "continual unlawful acts, not just continual ill effects from an original violation." Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981).

Gutierrez's allegations suggest that a number of events constituting his eighth amendment violation may have occurred in the two years before he filed this complaint.  For example, Gutierrez asserts that ODOC commissary staff pretended to reorder shoes, but then simply provided him the same pair of shoes he had previously rejected, and he alleges he has rejected seven other pairs, without reordering, in the past ten years, including "[a]pproximately three or four pairs in the applicable time frame of this claim." Id. at ¶ 21, n. 7.  Finally, on January 16, 2008, when defendant Angela Smith (then Gross), Statewide Commissary Manager, responded to his complaints about the defective shoes causing pain by writing that the Commissary inspects the product it receives and that it would "never knowingly sell a defective product." Pl.'s Ex. 15. Since the ODOC defendants did not address Gutierrez's argument that he had alleged a continuing violation, and since at first blush it appears Gutierrez may have done so, I decline to dismiss the First Amended Complaint on the basis of statute of limitations at this time.

///


///

Page 11 - OPINION AND ORDER ON MOTION TO DISMISS

**CONCLUSION**

Based on the foregoing, defendants' Motion to Dismiss [58] is denied.  Gutierrez's sur-reply [87], filed on June 9, 2011 is stricken since I indicated, in the orders denying his two requests to file the sur-reply, that I did not anticipate further briefing and I took the motion under advisement on May 31, 2011

IT IS SO ORDERED.

Dated this _____29th_____, day of June, 2011.


 /s/ Garr M. King_____
Garr M. King
United States District Judge


Page 12 - OPINION AND ORDER ON MOTION TO DISMISS